**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert W. FLINT, Defendant-Appellant.**

**No. 76–1168**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

June 23, 1976.

John Volz, Fed. Public Defender (Court-appointed), Richard T. Simmons, Jr., Asst. Federal Public Defender, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Ernest C. Chen, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

Appellant Flint was convicted in a jury trial of bank robbery, in violation of 18

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

U.S.C., § 2113(a) and was sentenced to ten years imprisonment, with the recommendation that he serve his sentence in an institution which had an alcoholism treatment program. Flint alleges that the evidence was insufficient to sustain a conviction; that the court erred in refusing to ask four of Flint's proposed voir dire questions; and that the court erred in refusing to charge lesser-included offense of larceny.

On the afternoon of September 17, 1975, Flint hailed a taxicab in New Orleans and told the driver that he wanted to go to a bank where he could cash a check. The cabdriver took him to the National American Bank, but after discovering that it was closed the driver suggested he try the International City Bank, a federally insured banking institution, located on St. Charles Avenue. When they reached the bank, Flint got out of the cab and told the driver to wait. Inside the bank appellant went up to Yelitza Torres, a teller, with a bank deposit slip on which he had written "All of it" in the amount section and on the bottom of the slip: "This is a robbery. Give me all your money". At first Torres thought the appellant was just another bank customer and without reading the note asked for his account number. Flint replied: "Don't be funny, dummy. Read the note!" After reading the note she activated the silent alarm and the surveillance camera, at the same time placing the threatening note on the counter and trying to push it around so that the tellers on the other side would see it. While counting out the bills she stalled for as much time as possible with the result that Flint told her to hurry up because he had a gun. He was speaking in a low voice and when she asked him what he had said, he replied, "A pistol", again she said, "I can't hear you", and he repeated, "A gun". She did not see him reach for a weapon but his hands were kept down and she could only see the upper part of his person from her teller window. She noticed that all the time he had a nervous smile on his face and his eyes were somewhat glazed, so that she thought he might have been smoking grass but he was not staggering. At no time did he have any trouble in giving her instructions.

Kenneth Roig, the Assistant Manager, was alerted by the head teller that a robbery was in progress. He told his secretary to call the police and then returned to his desk. Flint then walked out of the bank and went to the waiting taxicab. However, Paul Geeg, the bank security guard had already been alerted to the robbery and managed to stop the cab as it was backing up. He ordered Flint out. At first Flint was reluctant and reached inside his pocket but apparently later became frightened and allowed himself to be removed from the cab. He was then taken to the personnel office where they searched him and found the missing money. During the course of the search, Flint remarked, "I almost got away with it". Geeg testified that Flint was not staggering, that he was coherent all the time and did not act drunk, but appeared a little dazed and kept a silly smile on his face. He "just didn't smell right", but did not smell of alcohol. The police officer who investigated the robbery about thirty minutes later testified that Flint claimed he had drunk a couple of beers but that he did not give the impression of being drunk or on drugs.

Flint took the stand and testified that he had just arrived in New Orleans on September 16, 1976, from Rhode Island and had checked in at the Noble Arms Hotel in the French Quarter, a hotel which had been recommended to him by a fellow bus passenger, and later that evening had met a woman called "Brandy" in a French Quarter bar. They had made a round of French Quarter places together, ending up at Pat O'Brien's, where they ordered a couple of "Hurricanes" and took them back to his hotel room where they spent the night. Once inside the room she had pulled out a vial of pills and asked him whether he wanted "to take a trip". Recognizing the pills as LSD, which he had once taken at a party with unpleasant effects, he refused but supposed that she must have slipped some of the pills into his drink anyway, because he woke up the next morning after

having experienced vivid dreams in strange colors and found both the woman and his money missing. He testified that he felt very disoriented and confused and that from the time he left the hotel until he was apprehended in the taxicab outside the bank he had no recollection of where he had been or what he had done.

■ Appellant's sole defense was that he was so under the influence of LSD that he could not have formed the necessary specific intent to commit the robbery. The government, on the other hand, contends that there was an abundance of evidence to support the jury's verdict. Both sides put on expert witnesses. Dr. Ritter, a psychiatrist called by the government, testified that LSD was a hallucinogenic which caused distortion of the senses and disorganized behavior, that a blackout under LSD would be very unusual and that Flint's actions, especially the way the note was written and presented to the teller, would indicate that he was acting in an organized way and was not under the influence of LSD. The defense called Dr. Morgan, a specialist in pharmacology, but his testimony was not completely favorable to the defense since he testified that LSD was a stimulant, it did not usually make people sleepy while they were on it, and only very rarely would it be likely to cause amnesia.

A review of the record clearly shows that a reasonably minded jury would have no difficulty in rejecting Flint's explanation of his actions and concluding that he had the necessary specific intent to commit the robbery.[1]

■ Flint claims that he was prejudiced by the court's failure to ask certain voir dire questions proffered by the defense. He is chiefly concerned with the court's failure to ask questions eleven and twelve relative to any prejudice a juror may entertain against an intoxication defense. We have reviewed these proffered questions and find that the court did not abuse the considerable discretion it has in this area, Rule 24(a), F.R.Cr.P.; 3 Wright Federal Practice and Procedure § 381. This is especially true in view of the adequate instruction given by the court on specific intent and the influence of drugs and alcohol. *See* Note 1, *supra*.

■ Flint's final allegation of error as to the denial of his request for the lesser-included offense instruction is without merit since in the instant case the additional element required, the taking "by force or violence, or by intimidation" was uncontradicted and undisputed by the evidence. Flint had presented teller Torres with a note demanding money and threatened to use his gun. There is no factual dispute as to how the money was taken from the teller. Hence, denial of the motion for the larceny offense instruction was proper since the charged greater offense did not require the jury to find a disputed factual element which was not required for conviction of the lesser-included offense, *United States v. Rogers,* 5 Cir., 1974, 504 F.2d 1079, 1085, quoting *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882, 888 (1975).

The judgment of the District Court is AFFIRMED.

1. The court charged the jury as to intent as follows:

"To establish specific intent, the government must prove the defendant knowingly did an act which the law forbids, or purposely intending to violate the law. Such intent can be determined from all the facts and circumstances surrounding this case.

"Now, although being under the influence of some drug, even if a drug taken for medicinal purposes, or under the influence of alcohol, it is not alone a defense.

"The fact that a person may have been under the influence of a drug or alcohol at the time of the commission of an alleged offense may negate the existence of specific intent.

"So, evidence that a defendant acted while in such condition due to the use of some drug or alcohol is to be considered in determining whether or not the defendant acted with specific intent as charged.

"If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of drug or alcohol influence, the mind of the accused was capable of forming or did form the specific intent to commit the crime charged, the jury should acquit the accused."