**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George E. MOORE (88–5932) and**
**Charles R. Morse, (88–5942),**
**Defendants–Appellants.**

Nos. 88–5932, 88–5942.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1989.

Decided Oct. 9, 1990.

Louis DeFalaise, U.S. Atty., John M. Compton, Asst. U.S. Atty., Michael Baer, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Lexington, Ky., for U.S.

J. Guthrie True (argued), Stoll, Keenan & Park, Frankfort, Ky., for George E. Moore.

John K. West (argued), McCoy, Baker & Newcomer, Lexington, Ky., for Charles R. Morse.

Before JONES and RYAN, Circuit Judges; and HORTON, Chief District Judge.*

HORTON, Chief District Judge.

Defendants, George E. Moore and Charles R. Morse appealed from their convictions by a jury of offenses arising out of the armed robbery of the United States Post Office in Waddy, Kentucky, on March 23, 1987. The indictment contains two counts. Count 1 charges Moore and Morse with aiding and abetting each other in committing the armed robbery of the post office during the course of which they placed in jeopardy the lives of the postmistress and a rural letter carrier, in violation of Title 18, United States Code, Sections 2114 and 2. Count 2 charges Moore and Morse with aiding and abetting each other in relation to a crime of violence by knowingly carrying a firearm during the commission of the post office robbery, in violation of Title 18, United States Code Sections 924(c) and 2.

Because we find no reversible error occurred during the trial of this case, the convictions of both Moore and Morse are affirmed.

## I. Facts

On July 15, 1987, defendants, Moore and Morse, were indicted by a federal grand jury in the Eastern District of Kentucky, in a two Count indictment charging them with armed robbery of the United States Post Office at Waddy, Kentucky, carrying a firearm during the commission of a crime of violence and aiding and abetting each

---

* The Honorable Odell Horton, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

other in the commission of the offenses in violation of Title 18, U.S.C. § 2114, § 924(c) and § 2 respectively. Moore and Morse were tried jointly.

The defendants were convicted of taking during the armed robbery a total of ninety-seven postal money orders, two hundred eleven dollars and sixty-five cents ($211.65) in cash, a postal money order imprinting machine and a United States Post Office mail bag, from the person and presence of Postmistress[1] Linda Waites and rural letter carrier Judy Mackey. The taking of the property of the United States was effected by placing in jeopardy the lives of Linda Waites and Judy Mackey with a dangerous weapon, a semi-automatic pistol.

As part of the investigation leading to the conviction of Moore and Morse, Beverly Kopp, the live-in girlfriend of Moore, contacted Detective Charles Maxey, of the Indiana State Police and informed him that Moore had instructed her to retrieve some of the stolen money orders which were hidden under a chest-of-drawers in their bedroom and deliver them to an individual called Monkey Man at a certain location in Jeffersonville, Indiana. Nineteen money orders were recovered from the bedroom by Detective Maxey with the consent of Ms. Kopp and introduced into evidence during the defendants' trial. Detective Maxey and Ms. Kopp both testified at trial describing the recovery of the nineteen money orders. Ms. Kopp also testified about her telephone conversation with Moore regarding the money orders. Prior to trial, Moore moved to suppress the evidence and Kopp's testimony. Following a hearing, the district court denied the motion. In addition, prior to trial, Moore filed a motion for separate trials and the district court denied the motion.

After the jury had been impaneled and the trial began, Morse moved for severance

and a continuance because of back pain. The district court denied both motions and advised Morse to inform the court if his pain reached the point where he could not continue. If so, the court would stop the trial and take a recess.

On July 13, 1988, after a three day trial, the jury returned verdicts of guilty against each defendant on both counts in the indictment. Subsequently, on August 15, 1988, the defendants were sentenced to twenty-five (25) years on the armed robbery charge, and to a consecutive five (5) years on the firearm charge. The defendants appeal their convictions.

## II. Discussion

The appellants claim their convictions should be reversed for a plethora of reasons. Although, this is a consolidated appeal, each appellant has asserted grounds which he alleges constitute reversible error. There is some overlap among appellants' claims and Morse has adopted all arguments presented by his co-defendant, Moore. Therefore, for clarity sake we will discuss the issues topically making references as necessary to the facts pertaining individually to appellants' arguments.

### A. Severance or in the Alternative Mistrial

■ Once defendants have been properly joined under Federal Rule of Criminal Procedure 8(b), a "strong showing of prejudice" is required to justify severance. *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir.1988). Denial of a Rule 14[2] severance will not be disturbed on review unless the district court abused its discretion in denying the motion. *United States v. Warner*, 690 F.2d 545, 552 (6th Cir.1982).

■ To show a district court abused its discretion, the defendants must make a strong showing of prejudice. *Id.* Specifi-

---

1. For the purpose of consistency with terminology used in the indictment Linda Waites, Postmistress is hereinafter referred to as Linda Waites, Postmaster.

2. **Federal Rules of Criminal Procedure**

 Rule 14 provides in relevant part:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.
 * * * *

cally, the defendants must show an inability by the jury to separate and to treat distinctively evidence that is relevant to each particular defendant on trial. *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir.1985). Even if a defendant may establish some potential jury confusion, this must be balanced against society's need for speedy and efficient trials. *Id.* As a general rule, persons jointly indicted should be tried together. *United States v. Stull*, 743 F.2d 439, 446 (6th Cir.1984). This is particularly true when, as here, the offenses charged may be established against both defendants with the same evidence, *See United States v. Licavoli*, 725 F.2d 1040, 1051 (6th Cir.1984), and result from the same series of acts. *United States v. Hamilton*, 689 F.2d 1262, 1275 (6th Cir. 1982).

■■■ However, a single joint trial is impermissible if it violates a defendant's right to a fundamentally fair trial. *Licavoli*, 725 F.2d at 1051. The defendants have the burden of showing compelling prejudice. *Stull*, 743 F.2d at 446.

A defendant may move for a mistrial where there is a legitimate claim of seriously prejudicial error. *United States v. Dinitz*, 424 U.S. 600, 609–10, 96 S.Ct. 1075, 1080–81, 47 L.Ed.2d 267 (1976); *see also United States v. Atisha*, 804 F.2d 920, 926 (6th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

The denial of a mistrial is generally within the discretion of the trial court. *Atisha*, 804 F.2d at 926. Further, the standard of review of the trial court's ruling is whether the trial court has abused its discretion. *Id.*

We believe that a determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion; if, by admitting [the objected to] evidence, the trial was not rendered unfair, we do not believe the district court can be said to have abused its discretion by denying defendant's motion for a mistrial. *Atisha*, 804 F.2d at 925–26.

Defendants claim the district court erred by failing to grant Moore's multiple motions for severance or, in the alternative,

motions for a mistrial. This claim raises issues concerning the effect the trial court's actions had on the ability of the jury to decide fairly and separately the guilt or innocence of each defendant.

■■ Moore claims, inter alia, the disparity in the quality and quantity of evidence against his co-defendant Morse required a severance. However, a defendant is not entitled to a severance simply because the evidence against a co-defendant is far more damaging than the evidence against him. *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir.1987). As we noted in *United States v. Warner*, 690 F.2d 545, 553 (6th Cir.1982):

We recognize that, in a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that '[t]he jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately.'

*Causey*, 834 F.2d at 1288 (quoting *Warner*, 690 F.2d at 553). The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple-defendant cases. *Causey*, 834 F.2d at 1288 (citing *United States v. Jackson*, 549 F.2d 517, 525 (8th Cir.1976)), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).

■■ Moore claims the substantial testimonial and scientific proof which would be introduced to implicate Morse in the armed robbery of the Waddy, Kentucky, Post Office would create a "spillover" effect prejudicial to him. In *Gallo*, 763 F.2d at 1526, we articulated that:

The existence of ... a 'spill-over' or 'guilt transference' effect ... turns in part on whether the numbers of conspiracies and conspirators involved were too great for the jury to give each defendant the separate and individual consideration of the evidence against him to which he was entitled.

\* \* \* \* \* \*

*Id.* (quoting *United States v. Toliver,* 541 F.2d 958, 962 (2d Cir.1976)). Seven persons were indicted in *Gallo,* only five indicted defendants went to trial. *Gallo,* 763 F.2d at 1526. The Court did not find a "spillover" effect existed, in which the jury was unable to relate the evidence to each defendant, hence imputing the guilt to one defendant for the activities of his co-defendants. *Id.* In comparison to *Gallo,* this case involves only two defendants who were jointly indicted and subsequently tried together. The evidence against the defendants consisted of substantially the same witnesses, although different documents, and there was proof from an accomplice that Moore and Morse committed the robbery of the Waddy, Kentucky, Post Office. Here, this case does not involve a number of conspiracies and we do not find that the number of defendants was so great for the jury to be unable to give each defendant the separate and individual consideration of the evidence against him to which he was entitled. A defendant has no right to a separate trial merely because his likelihood of acquittal would be greater if severance were granted. *Gallo,* 763 F.2d at 1526. (citations omitted). Absent a showing of substantial prejudice, spill-over of evidence from one case to another does not require severance. *Id.* (citation omitted). The burden is upon Moore, who has failed to show either the substantial prejudice required for reversal or seriously prejudicious error which rendered his trial unfair.

At the close of the government's proof, Moore renewed his motion for severance or, in the alternative, for a mistrial on the ground that antagonistic defenses existed between him and Morse. In support of this motion, Moore argues that Morse's decision to call Vonda Jorgensen, the unindicted co-defendant against Morse's attorney's advice, put them in an antagonistic position. Moore had not planned to call Ms. Jorgensen, but had prior notice that she was available to testify at the government's request. Moore objected to Jorgensen's testimony on the basis that no notice of alibi had been given pursuant to Federal Rules of Criminal Procedure 12.1 and that Jorgensen's testimony created a situation somewhat analogous to that in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The district court overruled both objections and denied Moore's motion for severance or, in the alternative, a mistrial. Morse did not indicate that he was calling Jorgensen to testify to establish an alibi for him, nor did the government object to Morse calling Jorgensen as his witness. Discovery under Rule 12.1 was designed to be a prosecution-triggered device for the primary benefit of the government. *United States v. Bouye,* 688 F.2d 471, 473 (7th Cir.1982). In *Bruton,* the court held that a defendant's right to confrontation is violated when his nontestifying co-defendant's confession implicating him is admitted at a joint trial. *Bruton,* 391 U.S. at 127–28, 88 S.Ct. at 1622–23.

In the present case, both the unindicted co-defendant, Jorgensen, and the indicted co-defendant, Morse, testified at trial. Jorgensen inculpated Moore and Morse, and Morse's testimony exonerated himself and Moore. We find Moore had an opportunity to cross-examine the witnesses and this is clearly not a situation analogous to *Bruton.*

Inconsistent or different defenses by co-defendants do not require a severance of their trials. *United States v. Kendricks,* 623 F.2d 1165, 1168 (6th Cir. 1980). To prevail, the defendant must show that the "antagonism between co-defendants will mislead or confuse the jury." *United States v. Vinson,* 606 F.2d 149, 154 (6th Cir.1979). We recently held that a defendant carries the heavy burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial. *United States v. Benton,* 852 F.2d 1456, 1469 (6th Cir.1988). To meet this heavy burden, the defendant must demonstrate the jury's inability to distinguish the evidence relevant to each defendant. *Id.* We further stated that even if the defendant is able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials. *Benton,* 852 F.2d at 1469.

Reviewing Vonda Jorgensen's testimony, we find she unmistakably inculpated both Moore and Morse as co-participants in the armed robbery of the Waddy, Kentucky, Post Office. We further find no potential jury confusion as to the jurors' ability to relate Jorgensen's testimony to each defendant. Because "[t]he jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately," *United States v. Thomas,* 728 F.2d 313, 319 (6th Cir.1984) (citations omitted) and because Moore has altogether failed, in either oral argument or in the written brief to this court, to demonstrate in what way the jury was confused, we hold that the trial court committed no error in proceeding with a joint trial of Moore and Morse.

 Following the direct examination of Jorgensen, Moore again moved for a severance or, in the alternative, a mistrial, on the ground that the trial court improperly permitted the government to inquire into matters not covered on direct examination.

Rule 611(b) of the Federal Rules of Evidence states:

(b) Scope of Cross-examination. Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Under Rule 611, a trial judge has considerable discretion and a judge's ruling will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected. *United States v. Terry,* 729 F.2d 1063, 1067 (6th Cir.1984) (citations omitted). The subject matter of direct examination and issues of witness credibility are always open to cross-examination. *United States v. Arnott,* 704 F.2d 322, 324 (6th Cir.1983) (citation omitted). Cross-examination into collateral and other matters "as if on direct" are addressed to the court's discretion. *Id.* The "subject matter of the direct examination," within the meaning of Rule 611(b), has been liberally construed to include all inferences

and implications arising from such testimony:

The implications of the proffered testimony were very broad and any question which would have elicited testimony that was reasonably related to the inferences that might reasonably be drawn from his direct testimony would have been permissible.

*Arnott,* 704 F.2d at 324 (quoting *United States v. Raper,* 676 F.2d 841, 846 (D.C.Cir. 1982)). Similarly, in this case, as in *Arnott,* the "implications of the proffered testimony were very broad." On direct examination, Mr. West, counsel for Morse, asked Vonda Jorgensen:

BY MR. WEST:

Q. Isn't it—Let me rephrase my question, if I could. Were you in the Waddy, Kentucky, area on March 23rd, 1987?

A. I don't know the exact date, but I was in Waddy, Kentucky in March.

Q. *And you have knowledge regarding the robbery of that post office, don't you?*

A. Yes.

Q. You have cashed money orders that were taken in that robbery, haven't you?

A. Yes.

Joint Appendix at 273 (emphasis added). After a review of the government's cross-examination, we find the elicited testimony inculpating Moore and Morse was reasonably related to the inferences drawn from Vonda Jorgensen's direct testimony, hence, permissible. Accordingly, the district court did not abuse its discretion in refusing to limit cross-examination to any express questions posed on direct examination.

B. Suppression of Postal Money Orders and Statements

 Moore claims the district court committed reversible error by failing to suppress nineteen (19) money orders seized from his residence and by failing to suppress certain statements made by Moore regarding these money orders obtained in violation of his Sixth Amendment right to counsel. Specifically, Moore argues that Ms. Kopp was acting as a government agent and thereby deprived of authority to

consent to the search of the bedroom she shared with Moore. Moore relies on *United States v. Lambert*, 771 F.2d 83 (6th Cir.1985).

The district court's evidentiary rulings must be upheld on appeal unless they are clearly erroneous. *United States v. Coleman*, 628 F.2d 961, 963 (6th Cir.1980). Therefore, in reviewing the Court's rulings under this standard, our inquiry is limited to determining whether the rulings are supported by substantial evidence.

It is well-established that a third-party can consent to a search of jointly occupied property, as long as the third-party has "common authority" over the premises. *J.L. Foti Construction Co., Inc. v. Donovan*, 786 F.2d 714, 716 (6th Cir.1986). Moreover, in *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the Court held that proof of voluntary consent is not limited to proof that consent was given by the victim, but may be established by showing that permission to search was obtained by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. The Court reasoned that a joint occupant assumes the risk of his co-occupant exposing their common private areas to a search. Hence, once this risk is assumed, any reasonable expectation of privacy is lost. *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7.

Moore asserts this case is the antithesis of *Lambert*. While it is clear that Ms. Kopp instigated the initial contact with Detective Maxey and he participated in the search, the record fails to show that Ms. Kopp had the requisite government agent intent. In fact, the record shows that Ms. Kopp assisted in the investigation to avoid possible criminal implication. We conclude from the facts, that this case is not only the opposite or antithesis of *Lambert*, it is clearly distinguishable from *Lambert*. In *Lambert*, Ms. Hall was the defendant's housekeeper who with no other motive, merely sought to assist the police and did possess the requisite government agent intent. In this case, Ms. Kopp was the defendant's girlfriend. She was a joint occupant of the defendant's residence. She had common authority over the premises and assisted the police to avoid possible criminal implication of herself. Under these circumstances, we find Ms. Kopp was not a government agent. It is undisputed that she had common authority over the searched residence, that she shared the bedroom with Moore and that her consent was voluntary. We conclude that the district court properly admitted the nineteen (19) postal money orders found in the defendant's residence.

■ Moore argues that the district court erred in admitting into evidence testimony regarding Kopp's telephone conversation with him while he was incarcerated wherein he purportedly informed her where a number of postal money orders were hidden in their bedroom and advised her to deliver ten (10) money orders to an individual called Monkey Man in Jeffersonville, Indiana. Moore claims further error occurred when the actual details regarding the exchange of the money orders were admitted. Moore argues that the admission of Ms. Kopp's testimony about her alleged conversation with him was in violation of his Sixth Amendment rights.

In *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964) the Supreme Court held that the government violated the Sixth Amendment when it deliberately elicited incriminating information from an indicted defendant who was entitled to assistance of counsel. And, "[w]hatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments mean at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him ...." *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 485, 88 L.Ed.2d 481 (1985), (citing *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977)).

As the Supreme Court made clear in *Moulton*, the primary concern of the *Massiah* line of decisions is the secret interrogation by investigatory techniques that are the equivalent of direct police interroga-

tion. *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986). "Since the Sixth Amendment is not violated whenever—by luck or happenstance—the [Government] obtains incriminating statements from the accused after the right to counsel has attached, (citations omitted), a defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.*

The present case involves incriminating statements made by the accused to his girlfriend, Beverly Kopp. The record shows that Moore telephoned Ms. Kopp and instructed her where to find a number of postal money orders hidden in their bedroom. Moore advised her where to make a delivery of ten (10) of the money orders and to whom. After talking with Moore, Ms. Kopp voluntarily reported Moore's incriminating statements to the Indiana State Police. The record further shows that Moore's second call to Ms. Kopp was recorded by the police pursuant to Ms. Kopp's permission.

During Moore's trial the district court permitted Ms. Kopp to testify about Moore's incriminating statements made to her. Based upon the facts and circumstances of this case, we find the district court did not err in admitting Moore's incriminating statements. In applying the *Massiah* line of decision principles, it is clear that the Government did not take any action beyond merely listening to Moore's statements made to Ms. Kopp during the taped telephone conversation. We note, that at the time of the taped telephone conversation, nineteen (19) postal money orders had been recovered from Moore's residence and Moore's incriminating statements regarding the money orders had already been reported to the police by Ms. Kopp. It is thus apparent that no error was committed in admitting into evidence the details of the exchange of the money

orders as Moore had instructed Ms. Kopp. Upon our review of the record, we do not find the existence of a *Massiah* violation.

## C. Prosecutor's Comments During Closing Arguments

▮▮▮▮ Moore argues that the prosecutor's comments made during the prosecutor's initial closing arguments were prejudicial references to Moore's failure to call witnesses or testify and present evidence which constitutes an unfair and prejudicial shifting of the burden of proof. Moore claims his motion for a mistrial should have been granted and, since it wasn't, his conviction must be reversed.

During the prosecutor's initial closing argument, he made the following statements:

Now, in opening statement I stated to you what we thought the evidence would show. And, ladies and gentlemen, I would submit to you that we have shown exactly what we said we would show. *Now, what did the defendants tell you the evidence would show? Do you remember? Did they tell you anything other than just to discuss our evidence? I want you to try to remember what they said they would prove.* We told you we would prove the story of a bank [sic] robbery, and we've done that.

Joint Appendix at 562 (Emphasis added to illustrate Moore's objection).

In *Spalla v. Foltz*, 788 F.2d 400, 404 (6th Cir.1986), this Court reannounced its recognition that there is a distinction between direct and indirect comments upon a defendant's failure to testify:

The fifth amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself ..." An important corollary to that right is that neither a prosecutor nor a trial judge may comment upon a criminal defendant's failure to testify. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The rule set forth in *Griffin* applies to indirect as well as direct comments on the failure to testify. Cases involving direct comments pose little difficulty as

the court must reverse unless the prosecution can demonstrate that the error was harmless beyond a reasonable doubt ... Cases ... involving indirect comments on the failure to testify are more troublesome ... [W]e recently refused to adopt a *per se* rule that comments as to the uncontradicted nature of evidence violated *Griffin* even where the evidence in question could only have bean contradicted by the defendant ... Rather, the court must conduct a "probing analysis of the context of the comments," [*United States v.*] *Robinson*, 651 F.2d [1188, 1197 (6th Cir.1981), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981)], in order to determine "[w]hether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Butler, [v. Rose]*, 686 F.2d [1163, 1170 (6th Cir.1982) (en banc)].

*Id.* [*Raper v. Mintzes*, 706 F.2d 161] at 164–65 [6th Cir.1983] (footnote and citations omitted) (emphasis added). Therefore, if a prosecutor's comments are "indirect," the court should not automatically reverse, but should determine whether the comments were intended as a comment on the defendant's failure to testify or whether the jury would naturally and necessarily take them to be comments on the failure of the accused to testify.

*Id.* at 403.

The prosecutor claims the quoted portions of his closing argument were made in rebuttal to both defense counsels' comments of what the proof in the case would show. However, we are of the opinion, the prosecutor's statements did not constitute direct comments on Moore's failure to testify, but conceivably could be construed in some far out way as indirect references to Moore's failure to testify. He was the only defendant that did not put on any proof or call any witnesses and did not testify. Therefore, as previously noted in *Spalla:*

... we must conduct a "probing analysis of the context of the comments" to determine if they were unconstitutional. *United States v. Robinson*, 651 F.2d

1188, 1197 (6th Cir.1981), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981).

A probing analysis requires consideration of the following four factors:

1) Were the comments "manifestly intended" to reflect the accused's silence or of such a character that the jury would "naturally and necessarily" take them as such;

2) Were the remarks isolated or extensive;

3) Was the evidence of guilt otherwise overwhelming;

4) What curative instructions were given, and when.

*Spalla*, 788 F.2d at 404–05 (quoting *Hearn v. Mintzes*, 708 F.2d 1072, 1077 (6th Cir. 1983)).

We are convinced that the comments of the prosecutor were not "manifestly intended" to reflect on the defendant's failure to testify. *See Steele v. Taylor*, 684 F.2d 1193, 1204 (6th Cir.1982), *cert. denied*, 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983) ("Manifest intent will not be found 'if some other explanation for his remark is equally possible,'" quoting *Robinson*, 651 F.2d at 1197). We are further convinced that the jury would not have taken the prosecutor's statements to have been comments on Moore's failure to testify since Morse did testify, because the prosecutor made it clear that his argument was aimed at the proof that he stated he would present in proving the "story of a bank [sic] robbery."

The second factor mandates an inquiry into the scope of the remarks. The remarks were an isolated incident during the prosecutor's initial closing argument.

The third factor addresses the weight of the evidence against Moore. The evidence of guilt is very strong. The testimony of Vonda Jorgensen and John Moore, George Moore's brother, was consistent in the factual circumstances involving the events of the robbery and events that occurred after the robbery of the Waddy Post Office. Further, the testimony of the eye witnesses, Judy Mackey and Linda Waites, unmis-

takably put Moore at the scene of the robbery as a participant. Considering the totality of the evidence, we conclude for the purpose of this analysis that the evidence was overwhelming against Moore.

The fourth factor to consider in evaluating the prosecutor's comments is whether any curative instructions were given and if so, when were they given. Although no curative instructions were given immediately after the comments were made, curative instructions were given as part of the regular jury instructions in which at least three (3) times the jury was admonished that the Government has the burden of proving [the defendants] guilty beyond a reasonable doubt. We believe and therefore hold that the prosecutor's comments, viewed in the context they were made, did not rise to a *Griffin* violation.

## D. Jury Instructions

Moore claims the district court erred in several respects in instructing the jury. As a result, Moore claims his conviction should be reversed. We disagree.

■ Moore argues the district court erred by failing to set forth all of the necessary elements required to prove the offense of armed post office robbery pursuant to 18 U.S.C. § 2114. At the time of the offense, 18 U.S.C. § 2114 provided as follows:

Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

Based upon the above statute, Moore was charged in Count I of the indictment as follows:

That on or about the 23rd day of March, 1987, at Waddy, in the Eastern District of Kentucky, Charles R. Morse and George E. Moore, aided and abetted by each other, did rob Linda Waites, Postmaster of the Waddy, Kentucky, Post Office, and take from the person and presence of Linda Waites money and other property of the United States; and in effecting such robbery did use a dangerous weapon and put in jeopardy the lives of Linda Waites and rural letter carrier, Judy Mackey; in violation of Title 18, United States Code, Section 2114, and Title 18, United States Code, Section 2.

At the time of the robbery of the Post Office, Linda Waites was the Postmaster and was on duty. During the trial, both Waites and Mackey testified that Linda Waites was the Postmaster and was on duty during the robbery. Moore contends the district court committed reversible error in its instructions to the jury. First, because the district court did not require the jury to find that Linda Waites or Judy Mackey were in lawful charge, control or custody ... of any money or property of the United States.

The district court instructed the jury with regard to Count I of the indictment as follows:

The defendant is charged in Count I with violations of Title 28, Section 2114 and 2. Section 2114 of the United States Code provides in part as follows: *Whoever robs any person having lawful charge, control or custody of any money or other property of the United States* and puts in jeopardy the life of such person by the use of a dangerous weapon shall be guilty of an offense against the United States.

Section 2 of Title 18 provides as follows: Principals. A. Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. B. Whoever wilfully

causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

There are four essential elements that are required to be proved to establish the offense charged in Count I. *First, the act or acts of taking from the person and presence of another, money or other property of the United States.* Second, the act or acts of taking such money by force or violence or by means of intimidation. *Third, the act of putting in jeopardy the life of any person by the use of a dangerous weapon while engaged in taking the money or other property from the United States.* Fourth, doing such act willfully.

Joint Appendix at 568–69 (Emphasis Added).

Upon review of the elements required to be proved in Count I by the Government and the district court's instructions to the jury, we find the district court's instructions carefully spelled out the prohibited conduct articulated in the statute which clearly enunciated that "whoever robs any person having lawful charge ... of any money or other property of the United States and puts in jeopardy the life of such person by use of a dangerous weapon shall be guilty of an offense against the United States." The Court's instructions to the jury set forth the four elements that must be proved in order to find the defendants guilty of the offenses in Count I of the indictment. Moore argues that the first and third elements are defective, in that they fail to require the jury to find the person robbed, or the person whose life was put in jeopardy by the use of a dangerous weapon to be individuals, having lawful custody of property of the United States.

The district court charged the jury as follows to the first and third elements:

1. The act or acts of taking from the person and presence of another, money or other personal property of the United States;

3. The act of putting in jeopardy the life of any person by the use of a dangerous weapon while engaged in taking the mon-ey or other property from the United States.

We conclude that although the district court's jury instruction did not specifically state in its enumerated elements that the person robbed and the persons whose lives were put in jeopardy by the use of a dangerous weapon were in lawful charge ... of money or other property of the United States, the instructions to the jury with regard to Count I, taken as a whole, adequately set forth that the jury was required to find whether the perpetrators of the robbery of the Waddy, Kentucky, Post Office robbed, and put in jeopardy the lives of Ms. Waites and Ms. Mackey, who were in lawful custody or charge of property of the United States.

Moore argues that the district court's instruction to the jury was defective because it required the jury to find that the taking was done by force or violence or by means of intimidation. Moore contends the above factors are not elements of a Section 2114 offense. Further, Moore contends it was error to define "intimidation," "assault," and "threat of violence;" and the inclusion of these non-existent elements of "force," "violence," "intimidation," "threat" and "assault" constitutes reversible error. We disagree. The district court's instruction that the "act or acts of taking such money by force or violence or by means of intimidation" was simply explanatory of the term of armed robbery as applied to this case and were not erroneous. *See United States v. Mays,* 1 Idaho 763 (1880).

■ Moore contends the inclusion of the definitions of assault and threat is reversible error. Moore relies on *United States v. Bizzard,* 615 F.2d 1080 (5th Cir. 1980), in which the Fifth Circuit reversed a bank robbery conviction under Section 2113, because the trial judge added assault as an element in the jury instruction, thereby impermissibly allowing the Government to obtain a conviction by proving an assault and not proving what was charged in the indictment. *United States v. Gibson,* 820 F.2d 692, 700 (5th Cir.1987).

In this case, neither assault nor threat was added as elements of the charged offense under Section 2114. We conclude that the inclusion of the definition of terms was surplusage inasmuch as the district court did not add assault or threat as elements of the crime in the jury instructions. Here, the jury was required only to convict the defendants of crimes as charged in the indictment and was merely educated on the definitions of other applicable terms. There were no extraneous elements presented to the jury and therefore the district court committed no reversible error. *See United States v. Bizzard*, 615 F.2d at 1082.

■■■ Moore submitted the Court a proposed jury instruction relating to the lesser included offense of unarmed robbery of money or other property of the United States. Moore argues that since the Government failed to produce any dangerous weapon used during the course of the alleged criminal offense, it was incumbent upon the district court to give the jury the option to find that the robbery occurred without the use of a dangerous weapon. Moore and Morse claim all of the elements required for the lesser included offense instruction were satisfied and the proof supported such an instruction. Moore and Morse rely on *United States v. Roy*, 843 F.2d 305, 310 (8th Cir.1987), *cert. denied*, 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 916 (1988). The *Roy* court stated that lesser included offense instructions should be given when:

1) there is a proper request;

2) the elements of the lesser offense are identical to part of the elements of the greater offense;

3) there is evidence that would support conviction of the lesser offense;

4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that the jury could consistently acquit on the greater offense and convict on the lesser.

*Id.* at 310 (citations omitted). We find the *Roy* case is similar to the instant case. Here, as in *Roy*, the defendants did not present evidence at trial that refuted the elements differentiating the greater from the lesser crime. There was no conflict in the crucial evidence supporting conviction of the greater crime, and both defendants claimed complete innocence throughout the trial. Moore and Morse's allegation of error is without merit, since the element required that the robbery was effectuated by putting the lives of individuals having lawful custody of property of the United States in jeopardy by the use of a dangerous weapon was uncontradicted and undisputed by the evidence. The perpetrators used a gun to effect the robbery. Ms. Mackey testified "because they had a gun, they scared us to death", [T.R. Vol. I, p. 188]. Linda Waites testified the gun was pointed right at her and she was scared to death. [T.R. Vol. I, p. 105]. The perpetrators were identified by the victims as Moore and Morse. There is no factual dispute as to how the postal money orders, money order machine and money were taken from the postmaster and rural letter carrier. Hence, where the evidence of the use of a dangerous weapon is uncontradicted, there is no need to instruct on the lesser included offense. *See United States v. Flint*, 534 F.2d 58, 60 (5th Cir.1976), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). Therefore, as in *Roy*, the proof of the elements differentiating the greater from the lesser crime is not sufficiently disputed and we find, from the evidence in the case, there was no rational basis for the district court to instruct the jury on the lesser included offense of unarmed robbery.

E. Double Jeopardy

■■■ Moore and Morse argue that the consecutive sentences imposed against them for their convictions under 18 U.S.C. §§ 2114 and 924(c) violate the Fifth Amendment prohibition against double jeopardy. Each defendant was sentenced to twenty-five (25) years for the Section 2114 offense and to a consecutive five year sentence for the Section 924(c) offense. Both appellants rely on *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) and *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

In *Simpson*, the Supreme Court held that, "in a prosecution growing out of a single transaction of bank robbery with firearms, a defendant may not be sentenced under both of § 2113(d) and § 924(c). Similarly, in *Busic* the Supreme Court stated that "prosecution and enhanced sentencing under § 924(c) is simply not permissible where the predicate felony statute contains its own enhancement provision." *Id.* at 405, 100 S.Ct. at 1752. The *Busic* Court further stated that its reasoning had several strands, which included an analysis of the text of § 924(c) and the "sparse pages of the floor debate that [made] up the relevant legislative history." *Id.* The crucial material used for the *Busic* court's analysis is the following observation by Representative Poff:

> For the sake of legislative history, it should be noted that my substitute is not intended to apply to title 18, sections 111, 112, or 113 which already define the penalties for the use of a firearm in assaulting officials, with sections 2113 or 2114 concerning armed robberies of the mail or banks, with section 2231 concerning armed assaults upon process servers or with chapter 44 which defines other firearm felonies. *Id.* at 22232.

> *Simpson* pointed out that "[t]his statement is clearly probative of a legislative judgment that the purpose of § 924(c) is already served whenever the substantive federal offense provides enhanced punishment for use of a dangerous weapon." 435 U.S., at 13, 98 S.Ct., at 913. Moreover, Representative Poff's remarks were the only ones touching on the present question that was before the House when § 924(c) was adopted, and it is therefore reasonable to assume that they represent the understanding of the Congressmen who voted for the proposal. (Footnote omitted).

*Busic*, 446 U.S. at 405–07, 100 S.Ct. at 1752–53.

The Government seeks to avoid the precedence of *Simpson* and *Busic* by urging that their holdings were in fact the state of the law prior to 1984. The Government advances that in 1984, the Comprehensive Crime Control Act of 1984, specifi-

cally Chapter X, Pub.L. 98–473, § 1005, 98 Stat. 1837, 2138, was enacted in reaction to *Simpson* and *Busic*. The Government contends the district court's imposition of the consecutive sentences for their convictions under § 2114 and § 924(c) was proper, in compliance with the wishes of the legislators and does not constitute double jeopardy. We agree.

Our reasoning, similar to the Supreme Court in *Simpson* and *Busic*, is premised upon the legislative history of the amended text of § 924(c). We also decided we should search for congressional intent to determine the enhancement scheme of the amended text of § 924(c). The House and Senate Appropriations Committee (hereinafter the Committee) concluded that:

> Subsection 924(c) should be completely revised to ensure that all persons who commit federal crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, received a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.

H.R. No. 98–1030, 98th Cong., 2d.Sess. 4, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3491 (footnote omitted).

The Committee specifically noted that 924(c) was applicable to crimes set forth in 18 U.S.C. § 2114. *Id.* at 3491 n. 8. The Committee further concluded that:

> Part D of title X represents a complete revision of subsection 924(c) of title 18 to overcome the problems with the present subsection discussed above. As amended by Part D, section 924(c) provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any Federal "crime of violence," including offenses such as bank robbery or assault on a federal officer which provide for their own enhanced punishment if committed by means of a dangerous weapon. In

the case of a first conviction under the subsection, the defendant would be sentenced to imprisonment for five years. For a second or subsequent conviction he would receive a sentence of imprisonment for ten years. In either case, the defendant could not be given a suspended or probationary sentence, nor could any sentence under the revised subsection be made to run concurrently with that for the predicate crime or with that for any other offense ...

*Id.* at 3491–92 (footnote omitted).

We note briefly that a number of other Circuit Courts of Appeal have similarly rejected the double jeopardy argument against enhanced sentencing under § 924(c) when applied in connection with a crime of violence where a firearm is used. *See United States v. Shavers*, 820 F.2d 1375, 1378 (4th Cir.1987), *aff'd on remand*, 842 F.2d 1293 (1988); *United States v. Harris*, 832 F.2d 88, 91 (7th Cir.1987); *United States v. York*, 830 F.2d 885 (8th Cir.1987), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); and *United States v. Springfield*, 829 F.2d 860, 865 (9th Cir. 1987).

In our view, the legislative history of the amended text of 924(c) supports the conclusion that a conviction under § 2114 and enhanced sentencing under § 924(c) is permissible, mandated and does not constitute double jeopardy. Therefore, we hold that the district court did not err in its sentence imposed upon the appellants.

F. Rejection of Ex Parte Application for a Subpoena

■■■■■ Appellant Morse contends the district court erred in rejecting his *ex parte* application for a subpoena to be issued for the appearance of Sheriff John Akin. Morse argues the cumulative effect of the lower court's rejection of the subpoena application constitutes reversible error in that his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process were violated. We disagree.

Rule 17(b), Federal Rules of Criminal Procedure, provides in relevant part as follows:

The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

In making its determination of whether or not issuance of the subpoena is warranted, the district court is vested with wide discretion, *United States v. Rigdon*, 459 F.2d 379 (6th Cir.1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 917, 34 L.Ed.2d 700 (1973), and "a reviewing court should not reverse unless the exceptional circumstances of the case indicate that defendant's right to a complete, fair and adequate trial is jeopardized." *Terlikowski v. United States*, 379 F.2d 501, 508 (8th Cir.1967), *cert. denied*, 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604. This discretion is necessary to prevent abuses often attempted by defendants. E.g., *Speers v. United States*, 387 F.2d 698 (10th Cir.1967), *cert. denied*, 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871 (1968). While the court is cognizant that the right of an indigent criminal defendant to subpoena witnesses rests not only on Rule 17(b), but also on the Sixth Amendment right to compulsory process, *Rigdon*, 459 F.2d at 382 (Edwards, J., dissenting), and on the Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status, the preliminary showing required of a defendant is that the witness is "necessary" to an adequate defense. *United States v. Barker*, 553 F.2d 1013, 1020 (6th Cir.1977). Accordingly, the word "necessary" must be read to mean relevant, material and useful to an adequate defense, *see United States v. Greene*, 497 F.2d 1068, 1079 (7th Cir.1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1974).

The Sixth Circuit Court of Appeals agrees with the standard adopted by the Fifth and D.C. Circuits:

... if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments

are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.

*Barker, supra* at 1020 (citing *Greenwell v. United States,* 317 F.2d 108, 110 (D.C.Cir. 1963)). Neither rich nor poor defendants have an unfettered right to subpoenas without discretionary review by the district court. *United States v. Bennett,* 675 F.2d 596 (4th Cir.1982).

■ In the case at bar, the first request for issuance of a subpoena was made the first day of trial. Chief Judge Eugene Siler originally told counsel that he could have the subpoena issued [T.R. Vol. I, p. 236]. The record before the court does not indicate why the subpoena was not obtained at that time. When Morse renewed his subpoena request on the third day of trial, the court stated, "[e]verything that you have asserted here does not have anything to do with this case." [T.R. Vol. III, p. 3]. The court related that the witness' proposed testimony related to a jail escape and some apparently unrelated statement made by Vonda Jorgensen. [T.R. Vol. III, p. 4]. The district court then denied the subpoena request. Morse argues now that a Sheriff John Akin was a central character whose testimony was necessary to illustrate why Vonda Jorgensen would have implicated him in the armed post office robbery. The court notes that no further statement was made of just how the proposed testimony would accomplish this objective. Morse states that Jorgensen's interest at trial was antagonistic since she had allegedly entered into a "fully cooperative" immunity agreement with the Government and would be exposed to possible prosecution if she gave testimony which was favorable to Morse. [T.R. Vol. III, pp. 14–15, 95]. Consequently, Morse states it became essential for him to be able to call Sheriff John Akin as a witness in order to solidify and fully develop his defense. Upon the facts provided to the court, the claims advanced by Morse do not merit reversal by this court. According to the argument fashioned by Morse, the sole pur-pose of Sheriff Akin's testimony was to try and illustrate why Vonda Jorgensen would have implicated him in the robbery. The court notes that Morse had a full opportunity to examine Ms. Jorgensen, a witness he called, although he was limited to covering matters relevant to the robbery of the post office and his defense. [T.R. Vol. III, p. 89]. Accordingly, it would appear that Morse had an adequate opportunity to demonstrate any proclivity for bias or antagonism, as he alleges, on the part of Ms. Jorgensen, through the usual witness examination process at trial. The interposition of Sheriff Akin's proposed testimony bears little relevance, if any, to the issues in this case. Morse's allegations do not constitute a sufficient averment of facts to satisfy the requirements of Rule 17(b). We therefore conclude that the decision by the trial court to deny the subpoena was not error.

### G. Denial of Motion for Continuance Based on Alleged Physical Discomfort

■ Appellant Morse argues that the trial court abused its discretion when it declined to grant a continuance of the trial since he was suffering from a debilitating back ailment that affected his ability to participate in his own defense. The court notes and the record documents Morse's back ailment. It is not disputed that the defendant had recent back surgery a month or two before trial.

At the start of the second day of trial, Morse's counsel informed the court that his client needed a continuance due to back pain. Pursuant to counsel's request, the following dialogue took place:

THE COURT:

... if there is a problem with health, I don't know anything to do but we can— our only choice is if it becomes unbearable for the defendant, we can stop and have him examined by a physician, or we can continue the case, not cause a mistrial, but we can continue the case over for another week or so. But that I think is the only choice.... but I'll let you tell me what to do. If you want to stop long

enough to have him examined by a physician, we can do that. . . .

MR. WEST:

My client stated he wants to be examined, your Honor, by a physician. He doesn't believe he can go on.

THE COURT:

Okay. Well, what do you say about that, Mr. Baer?

MR. BAER:

I'm not sure. Again, your Honor, we're sympathetic with the pain he may have, but pain, as you know, is a subjective thing. We understand that he's recovering from surgery. But I wouldn't think that the Bureau of Prisons would have released him if they didn't think he could sit here in the courtroom for an extended period of time. The information that I got from the Bureau of Prisons was that he was capable of standing trial but that he may have to, maybe once an hour stand up and move about in a rather confined area, that he would be fine.

THE COURT:

The latest report we have in the record was that he should be able to stand trial. I don't know what the situation is.

. . . unless somebody over at the Detention Center feels that he's in such great pain, either a physician or a paramedic says that he's, he cannot stand the trial or is not able to do it, the court will go ahead. What we'll do is not go for long periods of time, and we'll have enough recesses where he can rest, but the court feels he should go ahead. We have sent him away earlier, and otherwise it would be disruptive to stop and see a physician right now. But if he gets in further pain he may stand up. Or if he gets to the point where he cannot go on, you signal the court some way and we'll stop and take a recess if we need to.

[T.R. Vol. II, pp. 2–6].

The trial court's denial of appellant's motion for a continuance did not result in denial to him of any of his rights to due process. In *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964), the Supreme Court stated:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process if the party fails to offer or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States*, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); *Torres v. United States*, 270 F.2d 252 (9th Cir.1959); cf. *United States v. Arlen*, 252 F.2d 491 (2d Cir.1958).

In the case at bar, the trial court initially offered to continue the trial and have Morse medically examined. Morse expressed his desire to have a medical examination. The court declined at that time, to stop for a medical exam, saying "if he gets to the point where he cannot go on, you signal the court some way and we'll stop and take a recess if we need to." [T.R. Vol. II, p. 6]. It is important to note that appellant Morse never again brought the matter to the attention of the court, and the record so reflects.

Based upon the above findings, the argument of Morse that his constitutional right to participate in his own trial was divested has no basis in the record. We, therefore, conclude the trial court made no error in this regard.

**H. Exclusion of Evidence Presented by Morse**

 Appellant Morse contends the trial court severely curtailed the presentation of his defense by excluding testimony which would have demonstrated that Vonda Jorgensen implicated him in the Waddy

Post Office robbery to ensure he would be available to testify at her Indiana murder trial. Morse states his belief that Jorgensen fabricated his involvement in the robbery because she knew his life and value to her would be endangered if he was taken into custody by Indiana rather than federal authorities. Appellant claims that while his line of questioning and testimony would not have directly proven his innocence, it would have shown a motive for Ms. Jorgensen implicating him and solidifying his role as a suspect. As a consequence of the trial court's exclusion of the proffered testimony and questions, appellant argues his Fifth and Sixth Amendment rights were violated. We disagree.

Under Rules 401 and 402, testimony is admissible into evidence if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; see Fed.R.Evid. 402 (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir.1988). Rule 403 carves out a narrow exception to this broad rule of admissibility:

> Although relevant, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. As the permissive language in the Rule indicates, the decision to admit relevant, but potentially prejudicial, evidence is committed to the sound discretion of the trial court. *See United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir.1984); *United States v. Hans*, 684 F.2d 343 (6th Cir.1982); *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.1979), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving "the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." 1. J. Weinstein & M. Berger, Weinstein's Evidence Para.

403[03] (1982), quoted in *Zipkin*, 729 F.2d at 390. As we stated in *Zipkin*, "the draftsmen intended that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that [the trial judge] should not be reversed simply because an appellate court believes it would have decided the matter otherwise." 729 F.2d at 390 (quoting *United States v. Long*, 574 F.2d 761, 767 (3rd Cir.1978), *cert. denied*, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978)).

Bearing in mind our deferential standard of review, we are unable to agree with Morse that the district court abused its discretion in excluding the proposed testimony and questions.

The district court permitted Mr. Morse to voir dire Ms. Jorgensen at length, but refused to permit Mr. Morse to present irrelevant, inadmissible evidence to the jury.

From our review of the record, Ms. Jorgensen merely corroborated the story of the robbery as told by all of the witnesses during the Government's case-in-chief. Ms. Jorgensen's testimony clearly inculpated Mr. Morse and Mr. Moore. Mr. Morse sought to introduce evidence regarding alleged unlawful activities of the Sheriff of Washington County, Indiana.

The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (quoting *Allen v. Morris*, 845 F.2d 610 (6th Cir.1988)). The exclusion of irrelevant evidence cannot implicate constitutional concerns. *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). In the case at bar, in light of the inculpatory nature of Vonda Jorgensen's testimony, as well as its corroborating character, we find no constitutional violation in the district court's exclusion of evidence that is of virtually no consequence to the determination of the cause of action. Accordingly, we conclude that the alleged constitutional error is without merit.

## I. Admission of Prior Conviction

■ Appellant Morse argues that the trial court abused its discretion in admitting evidence of a 1979 armed robbery conviction. At trial, the district court allowed the Government to impeach Morse with the 1979 armed robbery conviction. While Morse concedes that the armed robbery conviction was within the time limitations of Rule 609 (being nine years old), he contends the similarity of the crime that was the subject of that conviction to the charged offense rendered it so prejudicial as to outweigh any probative effect that the conviction may have had. Morse asserts that the trial court erred in allowing the government to use this conviction for impeachment purposes. We do not concur.

Rule 609(a)(1), Federal Rules of Evidence, provides as follows:

> General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime was (1) punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant ...

To substantiate his position, appellant invites this court's attention to the leading case of *Gordon v. United States*, 383 F.2d 936 (D.C.Cir.1967). In *Gordon*, then-Circuit Judge Warren Burger cautioned that similar prior convictions "should be admitted sparingly." *Id.* at 940.

Some of the factors which the judge should take into account in making his determination were articulated by Judge Burger to be:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue. *Id.;* see 3 J. Weinstein, Evidence, Para. 609[03] at 609–78 to 609–75 (1975).

Our Circuit has taken notice of the *Gordon* factors. In *United States v. Sims*, 588 F.2d 1145, 1149 (6th Cir.1978), we stated:

> Under Rule 609(b), the district judge must make 'an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice.' *United States v. Mahler*, 579 F.2d 730, 734 (2d Cir.1978).

In *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.), cert. denied, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), the court set down the following test for the admission of prior felony convictions under Rule 609:

> In the future, to avoid the unnecessary raising of the issue of whether the judge has meaningfully invoked his discretion under Rule 609, we urge trial judges to make such determinations after a hearing on the record, as the trial judge did in the instant case, and to explicitly find that the prejudicial effect of the evidence to the defendant will be outweighed by its probative value. When such a hearing on the record is held and such an explicit finding is made, the appellate court easily will be able to determine whether the judge followed the strictures of Rule 609 in reaching his decision. 3 J. Weinstein, Evidence Para. 609[03] at 609–78 (1975).

> The hearing need not be extensive. Bearing in mind that Rule 609 places the burden of proof on the government, Cong.Rec. 12254, 12257 (daily ed., December 18, 1974) (remarks of House conferees); 3 J. Weinstein, Evidence, Para. 609[03] at 609–40, 41, 42 (1975), the judge should require a brief recital by the government of the circumstances surrounding the admission of the evidence, and a statement of the date, nature and place of the conviction. The defendant should be permitted to rebut the government's presentation, pointing out to the

court the possible prejudicial effect to the defendant if the evidence is admitted.

We are cognizant that the purpose of Rule 609(b) is to prevent the conviction of a defendant on the basis of his prior criminal record when evidence of that record is introduced ostensibly for the purpose of impeaching the defendant's credibility, but the stale convictions are not probative of credibility. *Sims*, 588 F.2d at 1150.

In the case at bar, the trial court specifically found that the probative value of the nine-year conviction outweighed any prejudicial effect since Morse's credibility was "very much in contention." [T.R. Vol. III, p. 209]. The prior conviction went to credibility, and had impeachment value, which Rule 609 permits.

The government advised the trial court that it wished to use several prior convictions to impeach Morse. The trial court allowed the Government to voir dire Morse, outside the presence of the jury, on these matters. [T.R. Vol. III, pp. 200–209]. The court then allowed the Government to use only the 1979 armed robbery conviction. Upon completion of the question and answer, the trial court admonished the jury to only consider the prior conviction for its impeachment value. [T.R. Vol. III, p. 213]. This, we conclude, was entirely proper. Although the crimes were similar, the trial court was quick to limit any prejudicial effect by an immediate admonishment to the jury to consider the evidence only as to witness credibility. This cautionary admonishment to the jury, we believe, provided an adequate safeguard against any potential prejudice possibly engendered by the admission of the prior conviction. The trial judge's decision reflects, in our judgment, a proper exercise of discretion vested in him under Rule 609.

Having reviewed the entire transcript prepared for this appeal, the briefs of the parties and the argument of all counsel, we find no reversible error in this trial and therefore AFFIRM the judgments of conviction in this case.