**UNITED STATES of America, Appellee,**

v.

**Ozie Blaze COLLINS, Appellant.**

No. 92–2622.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1993.

Decided June 29, 1993.

Lee Lawless, Asst. Federal Public Defender, St. Louis, MO, argued, for appellant.

Thomas J. Mehan, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before LOKEN and HANSEN, Circuit Judges, and MURPHY,* District Judge.

DIANA E. MURPHY, District Judge.

Defendant appeals from his conviction for bank robbery. 18 U.S.C. § 2113(a) and (d). On appeal, he argues that the district court[1] deprived him of a fair trial by admitting irrelevant identification testimony, refusing to grant a continuance or hold a suppression hearing when he was surprised with certain physical evidence at trial, and admitting hearsay evidence which the prosecutor used to prove the truth of the statement during closing argument. We affirm.

## I.

The Landmark Bank on St. Charles Rock Road in St. Louis County, Missouri was robbed by two men on October 30, 1991. One of the robbers brandished a shotgun in the faces of several persons who were working or doing business in the bank. These individuals later identified the defendant Ozie Blaze Collins as the person who had carried the shotgun into the bank.

Prior to trial, the government made its file available to Collins for discovery. He was also informed that the government had not seized any physical evidence from him. Collins filed a motion in limine to suppress any mention of a robbery of a jewelry store or an attempted robbery of a Kentucky Fried Chicken restaurant which occurred on the same day as the bank robbery or the day before. The motion was granted.

At trial, the government offered testimony from four eyewitnesses to the robbery: Stacie Bennick and Deborah Mueller, tellers at the bank; Arthur Moser, a customer; and Richard Baumhoff, the bank manager. Bennick made an in-court identification of Collins as the man who had pointed a shotgun in her face and told her not to give him a dye pack or he would blow her brains out. She had also identified Collins in surveillance photos and a line-up at the police station. Mueller testified that she worked in the teller window adjacent to Bennick on the day of the robbery; she made an in-court identification of Collins as one of the two robbers. She had also identified him from the photos and at a line-up. Moser testified that he was standing at Mueller's window waiting for a cashier's check when the robbery occurred. He turned around when he heard someone scream and looked at the person with the shotgun. Moser picked the defendant out of a line-up and identified him in court. Bank manager Baumhoff had also identified the defendant from a line-up as the robber who entered his office with a shotgun and ordered him off the phone. The witnesses varied in their estimates of the age of the robber, and the defense claimed that their descriptions and a sketch of the robber did not conform to Collins' appearance.

Before the second day of testimony, defendant made an oral motion in limine to exclude evidence found in Roberta Loper's apartment. This evidence consisted of a letter to Collins and sheets and a pillow case which matched a pillow case used during the robbery to receive the money. Defendant argued that the government's offer of this evidence was contrary to its representation before trial that no tangible evidence had

---

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

been seized from the defendant. Counsel requested a continuance and a hearing so that he could establish defendant's Fourth Amendment standing as a part time resident of the apartment and to challenge the admissibility of the items found·in the search. The court denied his requests on the ground that he had had access to the items before trial and failed to make a timely motion. The court excluded the letter, however, because it had not been available to defendant before trial.

Testimony resumed and the government called William Militello, the manager of a Kentucky Fried Chicken restaurant. He testified that he recognized the defendant as an individual he saw outside his store the day before the bank robbery. He stated that he had recognized the bank surveillance photo published in the paper the day after the bank robbery to be the person he had previously seen wearing the same clothes. He also picked Collins out of a line-up and at trial as the person he had seen outside his restaurant, but he was not permitted to testify that he had recognized the shotgun in the photo or about the attempted robbery of his business.

The government also called Brian McGlynn of the St. Louis Metropolitan Police Department to testify about the search of the Loper apartment. Defendant made an anticipatory objection concerning possible hearsay testimony from McGlynn that Loper was the defendant's girlfriend. The government responded that the testimony would not be offered to prove the truth of the matter asserted, but rather to explain why the police searched that particular residence. The trial court overruled the objection.

McGlynn testified that police searched the Loper residence because they had received information that two individuals had been there who were connected to a bank robbery and stolen property from a jewelry store. Defendant immediately requested a bench conference and moved for a mistrial based on McGlynn's mention of the jewelry store robbery in violation of the pretrial order. The government responded by requesting permission to clarify that police were investigating Collins for the bank robbery, not a jewelry store robbery. The trial court denied a motion for mistrial and overruled defendant's objection on the assurance that the prosecutor would make the clarification.

On further direct testimony, McGlynn was asked if he had information at the time of the search that Loper was defendant's girlfriend. McGlynn responded yes, without objection from defense counsel. The government then introduced the pillow case and sheets found in the Loper apartment, also without objection. After defendant on cross examination attempted to link one of the other suspects, Curtis Wright, to Loper's residence, the prosecutor asked McGlynn on redirect if the information he had was that Loper was Collins' girlfriend. McGlynn answered yes, and defendant objected that the question had already been asked and answered. The trial court sustained the objection on that basis, but refused to instruct the jury to disregard the answer. The defense then renewed its motion for a mistrial due to McGlynn's earlier mention of the jewelry store robbery. The trial court denied the motion.

During his closing argument, the prosecutor stated that the pillow case was found in the residence of Collins' girlfriend. He mentioned this twice without objection. (T. 198, 201). When the prosecutor mentioned it a third time, the defendant objected that it was improper argument because the government had been allowed to elicit that testimony from officer McGlynn on the basis that it would be used to explain the reason the residence was searched, and not to prove the truth of the matter asserted. The trial court overruled the objection.

## II.

Defendant raises three issues on appeal: 1) the trial court erred in admitting the identification testimony of Militello because it was not relevant; 2) the trial court erred by refusing to grant a continuance or hold a suppression hearing concerning the admissibility of evidence found in the Loper residence; and 3) the trial court erred in admitting McGlynn's testimony about Loper being the defendant's girlfriend because it was used to prove the truth of the matter assert-

ed rather than for the claimed limited purpose.

■ Collins argues on appeal that it was not proper to permit Militello to bolster the other identification evidence. Militello testified that he recognized the man in the published surveillance photo as someone he had seen outside his restaurant in the same long trench coat, dark baseball cap, and sweater as in the picture. He also identified Collins at trial as the man he had seen in the photograph. Militello's evidence was relevant because it tended to prove Collins was the person in the surveillance photo taken at the time of the bank robbery. This was proper evidence for the jury to consider with the other identification evidence, particularly in light of the defense attempts to attack that evidence. The testimony did not invade the province of the jury because the jurors themselves could compare the surveillance photo with the defendant to assess Militello's testimony and to consider the identity of the bank robber. The evidence was not prejudicial since no testimony was offered about what Collins was doing in the vicinity of the restaurant.

Moreover, defendant did not raise a relevance objection at the time Militello testified. Prior to the testimony he objected under Fed.R.Evid. 404(b) to any other crimes evidence. After listening to counsel and the outline of the proposed testimony, the court indicated that the testimony would be identification testimony only, that it would not touch on any other robbery, and defense counsel raised no further objection. Only on appeal has defendant raised a relevance objection to the identification evidence.

Defendant's reliance on *U.S. v. Roy*, 843 F.2d 305 (8th Cir.1988), *cert denied*, 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 916 (1988), is misplaced. In *Roy*, a police officer was allowed to give his opinion on the truthfulness of the testimony of other witnesses, based on his experience as an investigator. In this case, Militello testified about what he saw, not about the testimony of others, so *Roy* does not apply.

■ Defendant also argues it was error for the trial court not to grant a continuance

or hold a suppression hearing on the admissibility of evidence found in Loper's apartment when the government sought to offer the pillow case and sheets at trial. The government had stated prior to trial that it had not seized any physical evidence from the defendant. It had not said that it had no physical evidence. The defendant had access to all the government's evidence during pretrial discovery. Police reports and search warrants in the file mentioned the items and the location where they were found. The only item not included in the pretrial discovery, a letter addressed to Collins from a prison inmate, was excluded by the trial court.

While it may have been preferable for the trial court to have held a hearing on the Fourth Amendment issues outside the presence of the jury, defendant has not shown he was prejudiced by the court's refusal to hold one. Even assuming defendant has standing to make a constitutional challenge on items found in Loper's apartment, he has not shown, either at trial or on appeal, that there was any Fourth Amendment violation in connection with the search. There has been no showing that if a continuance had been granted and a hearing had been held, the evidence would have been excluded.

■ Defendant's final issue on appeal concerns the admissibility of McGlynn's testimony about defendant's connection to Loper and the prosecutor's use of it during closing arguments. As acknowledged by the defendant, an out of court statement made by someone else to McGlynn and repeated by him at trial is not hearsay if offered for the purpose of explaining why an investigation was undertaken. *U.S. v. Brown*, 923 F.2d 109 (8th Cir.1991), *cert denied*, —— U.S. ——, 112 S.Ct. 110, 116 L.Ed.2d 80 (1991). We therefore reject defendant's argument that it was error to admit McGlynn's testimony during direct examination.

Defendant argues that the government's use of this evidence in closing argument was improper because it was used to prove the truth of the matter asserted. Although the prosecutor mentioned the pillow case found in the residence of Collins' girlfriend three times during closing, defendant only objected once. Defendant requested the jury be told

to disregard the statement, but did not request any sort of limiting instruction to use the statement only in considering why the police searched that particular residence.

In his final argument the prosecutor made reference to the testimony that McGlynn had gone to search Loper's apartment because he had been told that she was defendant's girlfriend and because of an informant's tip. On cross examination defense counsel had asked McGlynn about Curtis Wright and the Loper residence, and he later connected the two during his closing argument. In light of this, the prosecutor was entitled during his final argument to point out the evidence explaining why the police searched Loper's apartment. This purpose is clear from the prosecutor's rebuttal:

> He also says to you that Curtis Wright is connected to the home. There has not been one shred of evidence to support that. McGlynn has told you why he went to that house. That is the evidence before you. (Tr. 221).

This use of the evidence was not hearsay, and in these circumstances there was no error in overruling defendant's objection and denying his request that the jury be told to disregard the statement.

 Trial courts are vested with broad discretion in controlling closing arguments, and this court will reverse only upon a showing of abuse of discretion. *U.S. v. Lewis,* 759 F.2d 1316, 1350 (8th Cir.1985), *cert denied* by *Milburn v. U.S.,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). "We review the prosecutor's statements in the context of the entire trial to determine whether the argument complained of was so offensive as to deprive the defendant of a fair trial." *Id* (citations omitted). The prosecutor's statements in closing must be viewed in the context of how the evidence came in and how the arguments developed. Another important factor to consider is the amount of evidence indicating the defendant's guilt. *U.S. v. McCaghren,* 666 F.2d 1227, 1232 (8th Cir. 1981) (citation omitted). Here there was testimony from four eyewitnesses to support the identification of Collins as the robber with the shotgun. Evidence of his guilt was strong. The prosecutor's closing argument

did not deprive Collins of a fair trial, and the trial court did not abuse its discretion in its evidentiary rulings.

Affirmed.