# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2905

_____

Oakley Bernard Engesser,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　District of South Dakota.
Bob Dooley, Warden, Mike Durfee　*
State Prison; Larry Long, Attorney　*
General of the State of South Dakota,　*
　　　　　　　　　　　　　　　　　　*
　　　　　　Appellees.　　　　　　　*

_____

Submitted: March 24, 2006
Filed: August 2, 2006

_____

Before RILEY, BRIGHT, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

This is a habeas corpus case. See Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. After a jury convicted Oakley Bernard Engesser (Engesser) on August 30, 2001, of one count of vehicular homicide and two counts of vehicular battery, a South Dakota state court sentenced Engesser to fifteen years' imprisonment on the homicide charge, and ten years' imprisonment on the battery charges, with one ten-year sentence running consecutively, and the other running concurrently. The South Dakota Supreme Court affirmed the convictions and sentence, and affirmed the denial of Engesser's motion for post-conviction relief.

State v. Engesser, 661 N.W.2d 739 (S.D. 2003); see Engesser v. Weber, Civ. 03-408 (S.D. Cir. Ct. Apr. 20, 2004), aff'd, (S.D. July 9, 2004).  Engesser timely filed an application for a writ of habeas corpus under 28 U.S.C. § 2254.  The district court[1] denied habeas relief, concluding (1) the prosecutor did not violate Engesser's due process rights by (a) eliciting opinion testimony from State Trooper Edward Fox (Trooper Fox) that Engesser lied during a videotaped denial, and (b) commenting on Trooper Fox's testimony during closing argument; (2) Engesser failed to show he received ineffective assistance of counsel; and (3) the warrantless seizure of Engesser's blood to conduct a blood alcohol content (BAC) test did not violate Engesser's Fourth Amendment rights.  We affirm.

## I.    BACKGROUND

On the early evening of July 30, 2000, the Corvette in which Engesser and Dorothy Finley (Finley) were traveling collided with a van on Interstate 90 between Sturgis and Rapid City, South Dakota.  The Corvette, traveling over 100 miles per hour when it struck the van, rolled several times and came to rest on its roof in the highway's median.  The collision crushed the Corvette's passenger side.

With the Corvette lying on its roof, Finley was lodged underneath and in line with the passenger seat, and her feet were underneath the passenger side dash. Emergency responders used the Jaws of Life to extract Finley from the Corvette's driver's side because they could not open the passenger side door.  Finley was pronounced dead at the scene. Engesser was thrown from the car.  A responder to the scene found Engesser smelling of alcohol about six to ten feet from the Corvette's open driver's side door.  An ambulance transported Engesser to the hospital.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting, after independent review, the report and recommendation of the Honorable Marshall P. Young, United States Magistrate Judge for the District of South Dakota.

Trooper Fox led the accident's investigation. After examining the scene and receiving an erroneous report from a paramedic that Finely was found in the driver's seat, Trooper Fox went to the hospital to interview Engesser. Engesser was largely incoherent, but he denied he had been driving the Corvette. Trooper Fox noticed a strong odor of alcohol emanating from Engesser. Without a warrant or Engesser's permission, Trooper Fox ordered blood extracted from Engesser for a BAC test just "as a precaution."[2] Trooper Fox ordered the BAC test because a death was involved, Engesser exhibited an odor of alcohol, the exigent circumstances required action to obtain a usable blood sample, and the driver's identification was not conclusive. However, later that evening, Trooper Fox completed two reports indicating Finley was the Corvette's driver. Trooper Fox testified he believed further investigation into the vehicle's driver was necessary, and he listed Finley as the driver because she was the Corvette's owner and usual driver.[3]

About six weeks after the accident, Trooper Fox conducted a videotaped interview of Engesser, during which Engesser again denied driving the Corvette. The next day, Trooper Fox completed his report, concluding Engesser was the driver. Seven months later, in February 2001, Engesser was charged with vehicular homicide, second-degree manslaughter, and two counts of vehicular battery.

Before trial, Engesser moved to suppress the BAC test result, but the trial court denied the motion. The central issue at trial was whether Engesser or Finley was

---

[2]The test later revealed Engesser's BAC was .081, and extrapolated back to the time of the accident would have been .125, according to the prosecution's testifying chemist.

[3]At trial, Trooper Fox testified that before Engesser's blood was drawn, the paramedic who had erroneously informed Trooper Fox at the accident scene of Finley's body's location in the Corvette corrected himself and stated Finley's body was found in the passenger seat, but Trooper Fox also testified he learned this information "[i]n the weeks following" the accident.

driving the Corvette. At trial, the prosecution played Trooper Fox's videotaped interview of Engesser in its entirety. After the tape was played, the trial court allowed Trooper Fox to testify as to his opinion on Engesser's truthfulness during the interview. The following exchange took place:

Q:     (by prosecutor) When you spoke to the defendant at that September 13th interview you said, "I don't necessarily think you're lying." Did you think he was lying to you?

DEFENSE COUNSEL: Objection as to relevancy, Your Honor.
THE COURT: Overruled.

A:     Yes.
Q:     What did you base that on?
A:     My experience in interviewing people.
Q:     Okay. And what about his conversation with you did you–what about that conversation made you believe he was lying?

DEFENSE COUNSEL: Objection . . . that's argumentative, it calls for speculation, and it's more prejudicial than probative, it's the ultimate issue.
(Whereupon, there was an off the record discussion)

Q:     I believe my question was, what about the interview made you believe he wasn't telling you the truth?
A:     There were numerous things during the interview.

DEFENSE COUNSEL: Could I have a standing objection as to those matters, Your Honor?
THE COURT: Yes.

Q:     Such as?
A:     One thing right off the bat you noted on the interview that before I had even asked him a question he went into a rather lengthy explanation that seemed rehearsed to me . . . and that initially right off the bat struck me because it's not often that when you meet

-4-

with somebody they volunteer a lot of stuff. In fact normally it's just the opposite, when I meet with someone in my job capacity most people–

. . . .

Q:      What else was it about your interview with him that led you to believe that he wasn't telling you the truth?

A:      Well, one fact that I knew to be a lie, he told me that he had had two drinks all day, and I knew that was a lie.

Q:      How did you know that?

A:      Because I knew his blood results.

. . . .

Q:      With respect then to anything else that you believed that he was–or, anything else regarding your conversation with him that led you to believe that he wasn't telling you the truth?

A:      Several times during the interview if you pay close attention you'll note that when I ask him a question he will start to answer it and then stop and edit what he was going to say.

During closing argument, the prosecutor also briefly alluded to Trooper Fox's opinion testimony: "Ladies and gentlemen, you heard that based on Trooper Fox's training and experience he didn't believe that the defendant was telling the truth." The context of the prosecutor's comment was whether Engesser's videotaped statement that Finley liked to drive fast was believable.

A jury convicted Engesser of vehicular homicide and two counts of vehicular battery. After South Dakota state courts denied his direct and post-conviction appeals, Engesser sought habeas relief in federal district court, which also denied relief. Engesser's appeal brings the case before this court.

## II.    DISCUSSION

"In an appeal of a habeas petition, [w]e review the district court's findings of fact for clear error and its conclusions of law de novo." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citation omitted). For habeas relief under 28 U.S.C. § 2254,

an applicant must demonstrate the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. "In other words, the state court's application might be erroneous in our independent judgment without being 'objectively unreasonable.'" Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003)). The South Dakota trial court, supreme court, and habeas court, applying South Dakota and applicable federal law, found no reversible error. The federal district court denied habeas relief. Engesser faces a high hurdle to establish these several judicial decisions were contrary to or involved an unreasonable application of clearly established federal law or were unreasonable determinations of the facts in light of the evidence presented.

**A. Trooper Fox's Opinion Testimony on Engesser's Credibility**

Engesser argues the district court should have set aside his conviction as contrary to or an unreasonable application of federal law because the state trial court's decision to allow the prosecutor to elicit opinion testimony from Trooper Fox that Engesser lied during a videotaped denial and the prosecutor's comments during closing argument violated Engesser's due process rights.[4] An expert may not opine on another witness's credibility. Bachman v. Leapley, 953 F.2d 440, 441 (8th Cir. 1992) (citation omitted). "If such testimony is admitted, we must decide whether the wrong is of a constitutional dimension; that is, whether it is so prejudicial as to be fundamentally unfair, thus denying the defendant a fair trial." Id. (citation omitted).

On direct appeal, the South Dakota Supreme Court acknowledged the trial court's admission of Trooper Fox's testimony was "troublesome," but ultimately held, to the extent Engesser had not waived this issue by his counsel's incorrect objections to Trooper Fox's testimony, the testimony's admission was harmless error. Engesser, 661 N.W.2d at 750-51. The court reasoned the questioning's purpose was to allow Trooper Fox "to correct any misimpression the jurors might have taken" from Trooper Fox's remark during his interview of Engesser ("I don't necessarily think you're lying"), "not to give the jury [Trooper Fox]'s assessment of Engesser's character or overall credibility." Id. at 750. The court further reasoned the jurors were instructed

---

[4]Engesser argues AEDPA does not apply to his habeas application because the state court did not adjudicate his federal due process claim on its merits. See Brown v. Luebbers, 371 F.3d 458, 462 (8th Cir. 2004) (holding state court adjudicated due process claim on the merits when it cited to relevant federal law and invoked the governing standard, even though state court's brief discussion of claim was devoted to the state law evidentiary question). Engesser's argument fails. In addressing this claim, the South Dakota Supreme Court held any error was harmless, citing the South Dakota state law equivalent of Federal Rule of Criminal Procedure 52(a). Engesser, 661 N.W.2d at 751 (citing S.D.C.L. 23A-44-14); see Fed. R. Crim. P. 52(a); see also United States v. Triplett, 195 F.3d 990, 996-97 (8th Cir. 1999). We therefore conclude the state court adjudicated Engesser's federal due process claim on the merits.

they were the sole judges of witness credibility, and "South Dakota jurors are not likely to surrender their own assessment of the evidence, especially when a court instructs them that it is their duty to decide for themselves." Id. at 751.

Engesser relies on three Eighth Circuit decisions in claiming the state court's decision was improper. See Maurer v. Dep't of Corr., 32 F.3d 1286 (8th Cir. 1994); Bachman, 953 F.2d 440; United States v. Roy, 843 F.2d 305 (8th Cir. 1988); see also Atley v. Ault, 191 F.3d 865, 871 (8th Cir. 1999) ("To the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue.").

These three cases do not demonstrate the state court's decision was contrary to or an unreasonable application of federal law. First, Bachman was a habeas appeal of a rape conviction where an expert testified at trial as to the credibility of the victims' statements about the defendant's conduct. The appellate court found harmless error in allowing the expert to opine on the believability of the victims' stories based on the "degree of latitude in the admission of expert testimony in rape and sexual abuse cases." Bachman, 953 F.2d at 442. The state court in Engesser's case found the admission of Trooper Fox's testimony harmless; Bachman found the admission of the expert's testimony in that case harmless. Thus the state court's decision here was not opposite or contrary to a decision of the Supreme Court or this court. Further, the South Dakota Supreme Court reasonably chose not to extend the principle in Bachman, which expressly relied on the case involving rape, to its own non-rape context. Id. at 442.

Second, Roy was a direct appeal of a murder conviction where a Federal Bureau of Investigations agent testified at trial about the truthfulness of the defendant's accomplices' out-of-court statements. The appellate court found harmless error in allowing the agent to offer an opinion on the believability of the accomplices' statements, given (1) there was minimal foundation laid that the agent had training on divining truth; (2) the agent testified "his touchstone for truth or falsity was only the

common sense notion that if several persons' stories are consistent in minute detail, they are likely to be true"; (3) the agent's conclusions were attacked at length on cross-examination; and (4) the evidence against the defendant was overwhelming. Roy, 843 F.2d at 309. Again, the state court in Engesser's case found the admission of Trooper Fox's testimony harmless; Roy found the admission of the agent's testimony in that case harmless. Thus the state court's decision here was not opposite or contrary to a decision of the Supreme Court or this court. Further, the state court reasonably chose not to extend the principle in Roy to Engesser's case. While Engesser's case may appear more egregious than Roy (here, some foundation was laid for Trooper Fox's opinion, and his conclusion was not attacked on cross), and thus the state court may have been incorrect, we hold the state court was not unreasonable, given the strength of the case against Engesser and the jury instructions on witness credibility. See Williams, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

Third, Maurer was a habeas appeal of a rape case where during trial, which "was essentially a credibility contest" between the defendant and the victim, the prosecution called four witnesses to testify about their conversations with the victim about the incident. Maurer, 32 F.3d at 1288. The court held, "[g]iven the closeness of the case, the state of the evidence, and the manner in which the improper 'vouching' testimony was repeatedly solicited and reemphasized in the closing argument," the testimony was not harmless. Id. at 1290. Maurer is not contrary to the South Dakota court's decision here because the facts are materially distinguishable. The case against Engesser was not close, the physical evidence made Engesser's case more than just a credibility contest between Engesser and Trooper Fox, and the prosecution only briefly, in one sentence during closing argument, referenced Trooper Fox's testimony.

In sum, based on our review of the applicable cases, we conclude Engesser fails to show the state court's decision was contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

-9-

Finally, we agree with the state court's acknowledgment that admission of Trooper Fox's testimony was "troublesome." Our independent judgment on admissibility in the first instance and on harmless error review may have been different. But, with the deference to state court determinations required by AEDPA and based on our thorough review of the record, we hold the state court did not unreasonably apply the harmless error standard to the facts. We therefore hold Engesser fails to meet his heavy AEDPA burden to show the state court's adjudication resulted in a decision based on an unreasonable determination of the facts in light of the evidence. See id. § (d)(2).

## B.    Ineffective Assistance of Counsel

Engesser next argues his conviction should be set aside because the state habeas court's decision that Engesser's counsel was not ineffective was contrary to or an unreasonable application of federal law. Engesser claims his counsel was ineffective by not properly objecting to Trooper Fox's testimony and by failing to object to the prosecutor's closing argument allusion to that testimony. Engesser's counsel objected to Trooper Fox's testimony "as to relevancy" and on the grounds the testimony was "argumentative, it calls for speculation, and it's more prejudicial than probative, it's the ultimate issue." Engesser contends his counsel should have said the testimony was improper opinion testimony on another witness's credibility.[5] See Olesen v. Class, 164 F.3d 1096, 1102 (8th Cir. 1999).

To prevail on an ineffective assistance of counsel claim, Engesser must demonstrate counsel's performance was deficient and Engesser was prejudiced by that deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Prejudice exists if "there is a reasonable probability that, but for counsel's

---

[5]Trial counsel's objections may have missed the improper opinion ground, but the speculation objection and the objection that the prejudicial effect of the testimony outweighed its probative value were each proper objections and reasonably should have brought the evidentiary problem to the trial court's attention.

unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Engesser relies on one Eighth Circuit case, Olesen, and one Seventh Circuit case, Earls v. McCaughtry, 379 F.3d 489 (7th Cir. 2004), to support his claim. In Olesen, a habeas appeal, the defendant argued his trial counsel was ineffective by failing to object to the opinion testimony of a prosecution witness, a psychologist who had counseled the victim and who opined that the victim would not fabricate a story involving sexual abuse. The court held, "given the state of South Dakota's evidentiary rules and case law at the time of [Olesen's] trial, a reasonably prudent lawyer would have objected to [the witness's] opinion testimony." Olesen, 164 F.3d at 1102. The court went on to hold, however, that the "deficient performance by Mr. Olesen's trial counsel [did not] render[] 'the result of the trial unreliable or the proceeding fundamentally unfair.'" Id. (citation omitted). The court so held because (1) the prosecution offered the opinion testimony on rebuttal to counter defense witnesses who had attacked the victim's credibility, (2) the testimony was brief, (3) defense counsel effectively cross-examined the witness, and (4) the prosecution did not mention the testimony in closing arguments. Id. The state court in Engesser's case found the performance of Engesser's attorney was not prejudicial, and Olesen found the same with respect to that defendant's attorney, thus the state court's decision was not opposite or contrary to a decision of the Supreme Court or this court. Further, the state court was not unreasonable in not extending the principle in Olesen. While Engesser's case seems more egregious than Olesen (here, the prosecutor offered the opinion testimony on direct, defense counsel did not cross-examine the witness, and the prosecution mentioned the testimony briefly during closing), and thus the state court may have been incorrect in not following Olesen, the state court was not unreasonable, given the strength of the case against Engesser, and Engesser's failure to show but for his counsel's performance he would have been found not guilty. See Williams, 529 U.S. at 410.

In Earls, defense counsel failed to object to a witness whose testimony "was pivotal–indeed, the jury asked for a transcript of her videotaped interview [with the child sexual assault victim] to consider while they deliberated." Earls, 379 F.3d at 496. Engesser's case is materially distinguishable. Here, Trooper Fox's opinion testimony, clarifying his comment on the videotape, was not pivotal. While the prosecutor urged the jury to listen to the taped interview, Engesser cannot show the jury followed this advice. The other evidence against Engesser was considerable and persuasive.

Finally, Engesser's attorney explained he decided as a matter of strategy not to object to the prosecution's brief reference in closing to Trooper Fox's opinion, avoiding any emphasis on the opinion testimony. The state court found that strategy was not deficient. Engesser fails to demonstrate counsel's strategy was deficient or that prejudice resulted from his counsel's strategy.

We affirm the district court in holding the state court's decision on whether Engesser's counsel was ineffective was not contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).[6]

## C. Admission of BAC Test Result

Engesser argues the state court's decision that Trooper Fox did not violate his Fourth Amendment rights by taking his blood without a warrant or consent was improper. "[A] warrantless blood test, performed without consent, is presumptively unreasonable unless the state actors involved had probable cause and exigent circumstances sufficient to justify it." Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1172 (10th Cir. 2003); see also Cupp v. Murphy, 412 U.S. 291, 296

---

[6]Engesser does not argue the state court's adjudication of his ineffective assistance of counsel claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d)(2). We therefore need not address AEDPA's second prong.

(1973); Schmerber v. California, 384 U.S. 757, 769-70 (1966). There is no question, and Engesser does not challenge, that given the evanescent nature of blood alcohol evidence, exigent circumstances existed to draw Engesser's blood. We therefore only address probable cause. "To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest." United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003) (citing Illinois v. Gates, 462 U.S. 213, 230-39 (1983)). Probable cause exists when "the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed." Id. (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)).

The state supreme court's discussion of the facts demonstrating probable cause show the state court's decision was not unreasonable. At the time Engesser's blood was drawn, Trooper Fox had available the following facts: (1) Engesser was found lying approximately six to ten feet from the Corvette's driver's side door, (2) emergency responders had to use the Jaws of Life to extricate Finley because they could not open the Corvette's severely damaged passenger side door,[7] (3) Finley was pronounced dead at the scene, (4) Trooper Fox detected a strong odor of alcohol emanating from Engesser, (5) the Corvette had been traveling at a high rate of speed when the collision occurred, and (6) exigent circumstances existed to preserve any BAC test evidence. Engesser, 661 N.W.2d at 748.

While there is some question as to the information Trooper Fox had at the time Engesser's blood was drawn regarding where Finley was found in the Corvette (that is, when the paramedic corrected his misstatement to Trooper Fox that Finley was in the driver's side), we believe the above facts alone are sufficient such that an officer of reasonable caution would believe Engesser had committed an offense. Furthermore, Trooper Fox's subjective beliefs about who he thought was driving are

---

[7]The state supreme court erroneously stated emergency crews extricated Finley from the passenger side of the vehicle.

-13-

not relevant to a probable cause inquiry. See Scott v. United States, 436 U.S. 128, 138 (1978) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.").

## III.   CONCLUSION

We affirm the district court's denial of habeas relief.

BRIGHT, Circuit Judge, dissenting.

I dissent. When an automobile driven at a high rate of speed rolls over, who knows where the occupants' bodies will end up? The majority's position fails on that uncertainty. Although the majority suggests otherwise, the prosecution produced no strong evidence that Engesser rather than Finley was the driver. No observers witnessed the accident, and the parties presented inconclusive circumstantial evidence. Both Finley and Engesser sustained injuries on the right sides of their bodies, which would be consistent with injuries suffered by one in the passenger seat. One witness stated that authorities found Finley with her legs under the dash and her face turned toward the driver's side; yet another testified that her legs pointed to the back of her car and her head toward the front.

In addition, a highway patrol accident reconstructionist testified that in a high-speed rollover bodies can be thrown "all over the place in [the] vehicle." More than one witness testified that, during a rollover, a passenger could be ejected through the passenger-side window and end up on the driver's side of the car. Further, a witness testified it would have been possible for the driver of a vehicle to end up in the passenger's seat during a high-speed rollover. Even the state's forensic expert could not opine whether Finley was the passenger or the driver.

-14-

Given the closeness of the case and the uncertainty of the evidence, I must respectively dissent. The defendant in my opinion was unjustly convicted. He deserves a new trial. I would hold that the state court made a decision that was contrary to or involved an unreasonable application of clearly established federal law when it determined that the admission of Trooper Fox's testimony was harmless error and that Engesser did not receive ineffective assistance of counsel. I would also hold that the state violated Engesser's due process rights by taking a blood test without probable cause.

First, Engesser properly demonstrated that the state court's decision was contrary to or involved an unreasonable application of established federal law. Everyone concedes that the admission of Trooper Fox's testimony violated established law everywhere, even in the Supreme Court. The majority concludes that, although troublesome, this error does not require a new trial because it was harmless. The majority applies the wrong harmless-error standard.

In Brecht v. Abrahamson, 507 U.S. 619 (1993), the United States Supreme Court made clear that the harmless-error standard to apply in habeas corpus proceedings is the standard enunciated in Kotteakos v. United States, 328 U.S. 750 (1946). In applying the Kotteakos standard, "[t]he habeas court cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place . . . . It requires a reviewing court to decide that 'the error did not influence the jury,' and that 'the judgment was not substantially swayed by the error.'" Brecht, 507 U.S. at 642 (Stevens, J., concurring) (citing Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

This court cannot conclude that the error in admitting Trooper Fox's testimony did not influence the jury or sway the verdict. Essentially, the prosecution made Trooper Fox its lie detector to counter the defendant's claim that he was not the driver. No other evidence could definitively prove whether Engesser was truthful in claiming he was not the driver. A jury likely would give great weight to the opinion of a law

-15-

enforcement officer, particularly a highway patrol officer. This is especially true when, as here, the patrol officer indicated that he had gained the ability to assess character and credibility through the sheer number of interviews he has conducted.

The Supreme Court directs us to discern "what effect the error . . . reasonably . . . had upon the jury's decision." Kotteakos, 328 U.S. at 764. It is quite clear that the admission of Trooper Fox's testimony had a substantial effect on the jury's decision. Engesser deserves a new trial.

Second, the state court should have held that Engesser received ineffective assistance of counsel. Its decision was contrary to or involved an unreasonable application of federal law. Any trial lawyer worth his salt should know the rules of evidence and how to make a proper objection. The Trooper Fox objection, "not relevant", was off the mark. The evidence may have been relevant, but all would agree it was inadmissible. The Fox opinion never should have been admitted into evidence. The defense counsel made the wrong objection, and in doing so did not call the trial court's attention to the great harm in having the witness, a highway patrol officer whose testimony would have considerable credibility, opine that the defendant lied. Not only did Engesser's lawyer not properly object to this testimony when it was first admitted, he failed to say anything at all when it was re-emphasized in closing argument. An effective lawyer would never have allowed this error in the first instance, and certainly would not have allowed it to remain as evidence of record.

The majority acknowledges that the state court may have been incorrect in not following Olesen v. Class, 164 F.3d 1096 (8th Cir. 1999), but holds that Engesser's ineffective assistance claim nonetheless fails because Engesser does not show prejudice. I disagree. Because the parties presented such evenly divided evidence, Trooper Fox produced pivotal testimony. Had Engesser's lawyer made the proper objection and the court excluded the testimony, "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

-16-

Finally, the state court improperly determined that the police had probable cause to draw Engesser's blood. Although Trooper Fox may have had probable cause to believe Engesser had been drinking, because he exuded a strong odor of alcohol, he lacked probable cause to believe that Engesser drove the Corvette. At the time he made the decision to draw Engesser's blood, Trooper Fox knew that authorities had found Engesser on the driver's side of the car and that they had extracted Finley from the more damaged, passenger's side of the car and pronounced her dead at the scene. He also knew that the Corvette had been traveling at a high rate of speed. Given the knowledge that bodies can be thrown all over the place in high-speed rollovers, the placement of Engesser's and Finley's bodies after the accident would not have given Trooper Fox probable cause to believe Engesser was driving the Corvette. Because no probable cause existed, Trooper Fox violated Engesser's Fourth Amendment rights when he drew Engesser's blood without a warrant or consent.

This case presents a flawed conviction. In the interests of justice and under the law, Engesser is entitled to relief under the writ of habeas corpus as it now exists.

_____